UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
at GREENVILLE


MARCUS E. THOMPSON #242056    )
     )
v.     )    NO. 2:07-CV-53
     )    *Greer/Inman*
T. CHERRY LINDAMOOD, Warden    )


## MEMORANDUM OPINION


Following a four-day jury trial in May, 2001 in the Criminal Court for

Sullivan County, Tennessee, petitioner Marcus E. Thompson, prisoner number 242056,

was convicted of three cocaine-related offenses and, in July of that same year, was

sentenced to serve an effective forty years imprisonment.[1]

Thompson now brings this *pro se* petition for a writ of habeas corpus under

28 U.S.C. § 2254, alleging that his confinement is unconstitutional, [Doc. 3].

Respondent has filed an answer/response, [Doc. 16], as well as the state court record

[Doc. 14, Addenda 1 - 4], arguing that the petition should be dismissed on several

grounds.   For the reasons which follow, the petition will be **DISMISSED**.

---

[1] The Court takes judicial notice that petitioner was also prosecuted for
violating the federal drug laws, and, upon his conviction, was sentenced to a one
hundred forty-four (144) month term.  [Doc. 144, Judgment of April 14, 2000, in
*United States v. Carpenter*, *et al.*, No. 2:98-cr-53].

# I. PROCEDURAL HISTORY

Following his conviction, petitioner pursued direct review, but his claims were denied. *State v. Thompson*, No. E2001-02521-CCA-R3-CD, 2003 WL 21999376 (Tenn. Crim. App. Aug. 22, 2003), *perm. app. denied* (Tenn. 2004). He also filed a post-conviction petition, but the trial court denied relief and the decision was affirmed on appeal. *Thompson v. State*, No. E2004-03028-CCA-R3-PC), 2006 WL 36907 (Tenn. Crim. App. Jan. 4, 2006). The face of the § 2254 petition indicates that petitioner likewise sought habeas corpus relief in Wayne County, but the Court has been unable to find such a case in its electronic legal research system and there is nothing in the state court record provided by respondent showing that a state habeas corpus case was filed. Be that as it may, petitioner has now presented this instant habeas corpus application, raising several grounds for relief.

# II. STANDARD OF REVIEW

A state criminal defendant may obtain federal habeas relief if he can demonstrate that he is in custody pursuant to the judgment of a state court in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254. Under Rule 8 of the Rules Governing Section 2254 Proceedings in the United States District Courts, the Court is to determine, after a review of the entire record, whether an evidentiary hearing is required. If a hearing is not required, the district judge may

dispose of the case as justice dictates. After carefully reviewing the entire record, the Court finds it unnecessary to hold an evidentiary hearing.

## III. FACTUAL BACKGROUND

The following factual recitation is taken from the Court of Criminal Appeals' opinion during direct review. *State v. Marcus Thompson,* No. E2001-02521-CCA-R3-CD, 2003 WL 21999376, at * *1-5 (Tenn. Crim. App. Aug. 22, 2003), *perm. to appeal denied* (Tenn. Jan. 5, 2004).

At trial, Larry Robbins, an agent for the First Judicial Drug District Task Force (1st DTF) testified that, on April 29, 1998, Melisa Long ("Long") was arrested after delivering two ounces of crack cocaine to an informant at a prearranged location in a restaurant in Washington County, Tennessee. Long agreed to help apprehend her supplier, hoping to receive a lesser sentence in exchange for her cooperation with law enforcement. That evening, Long called to arrange a drug transaction with petitioner, her supplier, and was then driven to Sullivan County, Tennessee. Both she and the supplier lived in Kingsport. Prior to the arranged drug transaction, Long and her possessions were searched and no contraband was found.

Long, whose Washington County drug charges had been pending for three years, testified that, after Robbins arrested her, she told him that petitioner was her supplier and that she would assist the authorities in arresting petitioner. Long testified that, to this end, she called petitioner from a pay phone outside the restaurant and told

3

him that she "needed more of what [she] had before," meaning that she needed two more ounces of crack cocaine. Petitioner instructed Long to go to petitioner's cousin's house to get the drugs. Long stated that, within thirty days prior to April 29, she had gone to his cousin's residence, had been given cocaine by either petitioner's cousin or the cousin's boyfriend, but had given them no money.

Long was driven to petitioner's cousin's apartment in the wee morning hours of April 30, 1998, by Brian Bishop of the 2nd DTF.[2] Officer Bishop waited in the vehicle while Long went inside the apartment occupied by the cousin and her boyfriend. Long apologized for being late, but did not have to explain why she was there before "[t]hey" gave her the crack cocaine—Long could not recall which person gave her the drug. She received the crack, did not pay for it, placed it in her purse, left the apartment, climbed into the car with the officer, and turned the crack cocaine over to him.

Later that afternoon, Long called petitioner and set up a meeting in a drugstore parking lot to pay for the crack cocaine. She had obtained $3,600 from DFT agents to pay for the drugs. Soon, petitioner arrived at the parking lot. Long got in the front seat of the vehicle and told petitioner that she had the money. Petitioner directed her to put it in his glove compartment. She placed $3,300 in the glove box, keeping $300 of the money to compensate herself for the part she played in the transaction, and

---

[2]   Since Kingsport (Sullivan County) is in the 2nd Judicial District Drug Task Force's jurisdiction, members of the 2nd DTF conducted the rest of the arranged buy.

chatted with petitioner a short time. They were then approached by the officers and arrested.

Long testified that she had never taken drugs directly from petitioner's hands, that he "would tell [her] where to get it," and that the drugs she sold in Washington County had been "fronted" to her because she already had a buyer for them. After the buyer paid for the crack, she would return with the money and pay for the cocaine. Long stated that neither petitioner's cousin nor her boyfriend would "front anything to [her] if [petitioner] didn't tell them to." Long testified that, on three occasions—all within thirty days before April 30, 1998—she had gotten drugs through petitioner.

Officer Bishop's testimony, in relevant part, was consistent with Long's, though he added that he had uncovered no contraband or money on Long or in her belongings when he searched both before leaving with her for petitioner's cousin's apartment. The officer also stated that Long returned to the vehicle with what appeared to be two ounces of crack cocaine—an amount which was far too great for personal use. Officer Bishop further stated that his next contact with Long was in preparation of the meeting she had arranged with petitioner in the drugstore parking lot to pay for the drugs. Long was wearing a wire and carrying $3,600 given to her by the DFT agents, who monitored the meeting with a receiver and moved in when they heard a pre-

arranged signal. After petitioner was arrested and taken into custody, the agents discovered the money in the glove compartment of petitioner's automobile.

Based upon these events, a warrant was obtained to search petitioner's cousin's apartment. On the top shelf of a closet in one of the two bedrooms was a cardboard box, inside of which was a plastic shopping bag. Inside the shopping bag were several large bags of white powder, two smaller bags of white powder, and two bags of a green leafy substance believed to be marijuana. The officers also discovered a set of digital scales, small sandwich bags, and a small bag containing several plastic sandwich bag "corners" of a white powder substance.

According to Officer Bishop, the marijuana was packaged as if for resale, the scales could be used to weigh drugs, the sandwich bags were the type used to package cocaine for resale, and the white powder, he judged, was cocaine, which he estimated to weigh about half a kilogram. The apartment did not contain money, expensive-looking items, devices for smoking crack (though crack cocaine is typically smoked), implements for snorting or injecting (the usual methods of using powder cocaine), or fingerprints of petitioner, his cousin, or her boyfriend. Two experts testified respectively that their analyses of a portion of the substances showed them to be 53.11 grams of cocaine base (crack cocaine), 487.8 grams of powder cocaine, and 32.46 grams of marijuana. Petitioner's convictions rested upon these facts.

## IV. LAW AND ANALYSIS

In support of respondent's position that this case should be dismissed, he offers three arguments. Each will be discussed in turn.

A. ***The "Procedural Default" Argument***

A state prisoner who petitions for habeas corpus relief must first exhaust his available state court remedies by presenting the same claim sought to be redressed in a federal habeas court to the state courts. 28 U.S.C. § 2254(b) (1). The exhaustion rule requires *total* exhaustion of state remedies, *Rose v. Lundy*, 455 U.S. 509 (1982), meaning that a petitioner must have fairly presented each claim to all levels of state court review, up to and including the state's highest court on discretionary review. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845-47 (1999). A prisoner who has failed to fairly present a claim in the state courts, and who is now barred by a state procedural rule from returning with his claim to those courts, has committed a procedural default. *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). A claim must also be offered on a federal constitutional basis—not merely as one arising under state law. *Stanford v. Parker*, 266 F.3d 442, 451 (6th Cir. 2001) (citing *Riggins v. McMackin*, 935 F.2d 790, 792-93 (6th Cir. 1991)).

Federal review is foreclosed for a claim that has been procedurally defaulted, unless the habeas petitioner can show cause to excuse his failure to comply with the state procedural rule and actual prejudice resulting from the alleged

constitutional violation. *Coleman,* 501 U.S. at 732. Respondent relies on a procedural default defense with respect to two and a half grounds raised in the petition.

### 1. *Jury-Trial Right (Ground one in the petition).*

In his first claim, petitioner asserts that the right to a jury trial, secured to him by the Sixth Amendment of the Constitution, was violated because his presumptive sentence was twelve years, which is also the maximum sentence he could be given, unless the judge increases the penalty based upon facts not found by a jury. He insists that this is what happened to him: His sentence was enhanced to twenty years—a punishment which the jury's verdict alone did not allow because it did not find all the facts which the law makes essential to the punishment.

The Court presumes that petitioner is arguing that the lengthening of his sentence violates his Sixth Amendment jury-trial right, as explained in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004).[3]

Respondent maintains that petitioner did not present the claim to the Tennessee courts on direct appeal or in his post-conviction petition. Though petitioner

---

[3] *Apprendi* held that, with the exception of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be found by a jury beyond a reasonable doubt. *Id.* at 490. In *Blakely v. Washington*, 542 U.S. 296 (2004), the Supreme Court applied *Apprendi* to Washington state's sentencing law. Finally, in *Cunningham v. California*, 549 U.S. 270 (2007), the Court found that the middle term in California's determinant sentencing scheme was the statutory maximum for *Apprendi*-purposes and that any fact which permitted an upper term sentence must be found beyond a reasonable doubt by a jury.

has not pled otherwise, respondent is incorrect because the jury-right claim was raised in his post-conviction petition and decided by the trial court. [Addendum 4,[4] Amended Petition for Relief From Sentence, filed August 6, 2004; Add. 1, Doc. 1, Order of Judge Phyllis Miller, pp. 22-25]. The post-conviction court found that *Apprendi* did not apply since there was no allegation, and certainly no judicial finding, that petitioner had been sentenced outside his applicable range of punishment. The trial court further found that *Blakely* did not apply to cases on collateral review, such as the post-conviction petition, and that no relief could be afforded on that ground.

Nevertheless, the issue was not carried to the Tennessee Court of Criminal Appeals during petitioner's post-conviction appeal. [Add. 4, Doc. 1, Pet'r's Brief]. There are no remaining state court remedies to redress the claim, due to Tennessee's post-conviction one-year limitations statute and its "one petition" rule. *See* Tenn. Code Ann.§ § 40-30-102(a) and 40-30-102(c). Thus, the claim has been procedurally defaulted. *See O'Sullivan*, 526 U.S. at 845 ("[W]e conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."). No cause and prejudice has been offered, and federal review of the merits of the claim is now foreclosed by petitioner's procedural default.

2. *Denial of Due Process (Ground two in the petition).*

---

[4] Hereinafter "Add."

In this claim, petitioner maintains that his right to due process of law was violated when the trial judge amended the indictment during the jury instructions and then permitted him to be convicted of an offense for which he was not indicted. Respondent asserts that this claim too has been procedurally defaulted by petitioner's failure to raise the claim on direct appeal or post-conviction review in Tennessee courts and because state post-conviction rules preclude his return with his claim to those courts.

Petitioner acknowledges that the claim was not raised on direct appeal, but faults his trial counsel for this particular failing. Petitioner also insists that he offered the claim in his post-conviction pleadings, but does not mention that the state court found that he had waived the claim (when raised as an instance of ineffective assistance) and that he was not entitled to plain error review of his claim that his presentment was duplicitous. *Thompson*, 2006 WL 36907, at *12; *see Seymour v. Walker*, 224 F.3d 522, 557 (2000) (plain error review does not constitute a waiver of state procedural default rules) (citing cases).

A petitioner who has offered his federal claim to the state courts, but those courts have declined to address it, due to his failure to meet a state procedural requirement, has committed a procedural default. *Wainwright v. Sykes*, 433 U.S. 72, 86-87 (1977). Under case law in this circuit, when procedural default is claimed, a court must determine: 1) whether there is a procedural rule which applied to a petitioner's

claim and whether he complied with the rule; 2) whether the procedural rule was actually enforced against him; 3) whether it is an adequate and independent state ground sufficient to block habeas review; and 4) whether a petitioner can demonstrate cause for his failure to comply with the rule and prejudice resulting from the alleged constitutional violation. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

In Tennessee, "[a] ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented." Tenn. Code Ann. § 40-30-106(g). Waiver supplies an adequate and independent state law ground which will bar habeas review, unless petitioner demonstrates cause and prejudice. *Cone v. Bell*, 492 F.3d 743, 758 (2007).

The Court presumes that petitioner is making an attempt to avoid a finding of procedural default by asserting that the failure to present his claim to the state courts on direct appeal was a product of his attorney's ineffective assistance. The Court will presume further that the claim alleged in the federal petition is the same one presented as an attorney error in the post-conviction proceedings.

Attorney error may constitute cause, but only if it rises to the level of constitutionally ineffective assistance of counsel. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir.1994). Cause is not shown where an attorney merely failed to recognize the legal or factual basis of a claim or failed to raise

it despite recognizing it. *Reed v. Ross,* 468 U.S. 1, 16 (1984). Here, there are bald allegations that counsel failed to raise the issue, but no specific factual contentions to show that his attorney's performance was deficient and that prejudice resulted. *See Strickland v. Washington*, 466 U.S. 668, 687 (1986). Absent these two elements, there can be no constitutionally ineffective assistance.

But even if the claim of cause offered to this Court were supported by more than skeletal contentions of ineffective assistance, the state trial court determined that counsel had not rendered ineffective assistance in connection with the alleged flawed presentments. *Thompson*, 2006 WL 36907, *9-*12. As discussed below, the state court's decision passes both tests in 28 U.S.C. § 2254(d)(1) and (2) and, therefore, must remain undisturbed. Because counsel did not render ineffective assistance with respect to this claim, there is no "cause" to excuse petitioner's state procedural default. Federal review is now unavailable.

3. *Illegal Search & Seizure/ Denial of Due Process (Ground four in the petition)*.

*a)* Warrantless Search: In the first part of this two-part claim, petitioner maintains that the state did not produce a legal warrant to enter Janice Thompson's residence and seize evidence. This evidence, petitioner asserts, was used wrongfully to convict him. Respondent argues that the claim was not presented to the state courts, cannot now be presented to those courts due to restrictions imposed by state post-

conviction law, and, thus, has been procedurally defaulted.  Further, respondent insists that the claim is also precluded by the doctrine outlined in *Stone v. Powell*, 428 U.S. 465 (1976).  The latter argument is the more persuasive.

In *Stone*, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id*. at 494.  In other words, a habeas petitioner may not seek to raise issues challenging the legality of a search and seizure, if he had a full and fair opportunity to raise the claims in state court and if the presentation of the claims was not frustrated by any failure of the state's corrective processes.  *Id.* at 494-95.

A review of the record makes it clear that petitioner was given a chance to fully and fairly litigate his Fourth Amendment claims in the Tennessee courts.   Thus, under the *Stone* doctrine, petitioner's claim that evidence was seized without a warrant and then used to convict him is not reviewable in this federal habeas corpus proceeding.

B.  ***The "Insufficiently Pled" Argument***

*b) Brady* Claim:  In the second part of this claim, petitioner maintains that the State withheld exculpatory evidence of deals it made with state witnesses for their testimony.   Respondent takes the position that the claim is inadequately pled because it lacks any developed argument, such as a description of the "deals" or the identification

of the specific prosecution witnesses who were the beneficiaries of the "deals." As issue VI in petitioner's brief on direct appeal, he argued that "the State entered into an express or implied agreement with Melissa Long [the CI] regarding any criminal prosecution against her in exchange for her testimony against [petitioner]." [Add. 2, Doc. 1, p.27]. While lacking in details, this claim, as outlined in the federal petition, appears to be the same claim he raised in the state courts on direct appeal, relying on *Brady v. Maryland*, 373 U.S. 83 (1963). Though respondent's argument is judiciously raised, the Court will liberally construe this *pro se* petitioner's contentions as presenting the same claim he advanced in his direct review.

Construing the claim thusly, however, does not help petitioner. The Court of Criminal Appeals held that he had waived the claim by failing to raise it in the trial court, *Thompson*, 2003 WL 21999376, at *10, and this finding of waiver amounts to a procedural default. No showing of cause and prejudice has been made or even alleged. Federal review on the merits is precluded by petitioner's procedural default.

C. *The "Deferential Review" Argument*

4. *Ineffective Assistance of Counsel (Ground three in the petition)*.

In his final claim, petitioner alleges that his trial attorney, Jim Bowman, and appellate attorney, Steve McEwen, gave him ineffective assistance, in violation of his right to counsel under the Sixth Amendment. The first error charged to those

attorneys is that they failed to challenge Count three of the presentment as duplicitous or attack the jury instructions with respect to that count.

Count 3 of the five-count presentment alleged that petitioner "did unlawfully, feloniously and knowingly sell or deliver point five (.5) grams or more of a substance containing Cocaine, a Schedule II Controlled Substance." *Id.* at *1 n.2. The jury was instructed with respect to count 3 that it could find petitioner guilty of the "sale or delivery" or "both the sale and delivery" of cocaine.

Under habeas review standards, a district court may not grant a writ of habeas corpus for any claim adjudicated on the merits in state court unless the adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or resulted in a decision that rested on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d) (1) and (2). A state court's determination of a factual issue is to be presumed to be correct, and this presumption can only be rebutted by clear and convincing evidence. 28 U.S.C. § 2254 (e)(1). Credibility findings made by state courts are entitled to the presumption of correctness. *Smith v. Jago,* 888 F.2d 399, 407 (6th Cir. 1989), *cert. denied,* 495 U.S. 961 (1990).

Relying on *State v. Isabell*, No. M2002-00584-CCA-R3-CD, 2003 WL 21486982 (Tenn. Crim. App. June, 27, 2003), petitioner asserted, during his post-

conviction case, that his neither Mr. Bowman nor or Mr. McEwen raised the issue of

duplicity in count 3 of the presentment, which charged him with "sale or delivery" of

cocaine, or attacked the jury instructions, which amounted to an unconstitutional

amendment of the presentment and, thereby, allowed "the jury the right to pick and

choose offenses from the presentment." *Thompson*, 2006 WL 36907, at *9.

The post-conviction court rejected the claim and petitioner appealed. In

reviewing the issue, the state appellate court explained that it had held, in *Isabell*, that

a defendant could not "be convicted of the *sale or delivery* of a controlled substance

based upon the same set of facts under a single count of an indictment." *Id.*, at *10

(citing *Isabell*) (italics in original). The Court of Criminal Appeals further had

explained that it had agreed with the *Isabell* defendant that the indictments improperly

charged two separate offenses in a single count and that, because a defendant could not

be convicted of the *sale or delivery* of a controlled substance as alleged in a single count

of an indictment, her right to a unanimous jury verdict had been violated.[5] Recognizing

(by inference) that petitioner's duplicity and unanimity claims had merit, the state

appellate court observed that, unlike *Isabell*, the question in petitioner's case was not

whether the presentment was duplicitous or the verdict not unanimous, but whether his

---

[5] Unanimity of a jury verdict in state criminal trials is not a constitutional requirement. *McDonald v. City of Chicago, Ill.*, 130 S. Ct. 3020, 335 n.14 (2010) (citing *Apocaca v. Oregon*, 406 U.S. 404 (1972), and *Johnson v. Lousiana*, 406 U.S. 356 (1972)). Tennessee law, however, imposes such a requirement.

attorneys' failure to challenge the duplicitous presentment and the non-unanimous verdict amounted to ineffective assistance.

The Court of Criminal Appeals then pointed out that *Isabell* had been decided more than two years after petitioner's trial. The state court observed that, when questioned at the post-conviction hearing about the unanimity issue, trial counsel had responded that *Isabell* was "probably a good decision but, you know, if I should have forseen it then I should have forseen it. I didn't and I'm confident I never discussed that with [the petitioner]. I recall the [c]ourt discussing the jury instructions and that she was going to do it in the way that she did it." Counsel further stated that, at the time of trial, the "issue was not really that well known among the trial lawyers here in East Tennessee [and] . . . [was not] something . . . that was obviously apparent to those of us who practiced criminal law" and that, at the time of trial, drug " indictments . . .were drawn just exactly in the same way as they [were drawn in petitioner's case]," until "some smart lawyer came up with the idea and he was representing a fellow by the name of *Isabell*." *Id.* at *10-*11.

Attorney McEwen, petitioner's appellate counsel, similarly testified at the post-conviction hearing that *Isabell* was decided afer he filed petitioner's appellate brief and that, prior to *Isabell*, he was unaware of any decisions involving the fact that the phrase "sale and delivery' of a controlled substance were actually separate crimes. Mr. McEwen also testified that, while he had reviewed the record, the jury instructions, and

the verdict, which found both a sale and delivery, those documents would not have prompted him to think of the unanimity issue at that time and that he "wouldn't have addressed it . . . and the court may say I'm wrong, but I wouldn't have and I guess for years we didn't, so."

Based on this undisputed testimony (i.e., that the duplicity and unanimity issues were not well-known by lawyers in East Tennessee and that the customary wording of drug indictments in that locality at the time of petitioner's trial was identical to that in his presentment), the state appellate court did not find any ineffectiveness. Instead, it concluded that petitioner had failed to show that trial and appellate counsel's representation fell below an objective standard of reasonableness.

As noted previously, the relevant legal rule governing a claim of ineffective assistance is found in *Strickland v. Washington*, 466 U.S. 668 (1984). *Williams v. Taylor*, 529 U.S. 362, 390 (2000) (*Strickland* "squarely govern[s]" such claims). To establish such a claim, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense so as to render the trial unfair and the result unreliable. *Strickland*, 466 U.S. at 687. Though a reviewing court's scrutiny of counsel's performance is highly deferential, a petitioner who demonstrates that counsel's representation fell beneath an objective standard of reasonableness will establish a deficient performance. *Id* at 687-88. However, an attorney's conduct is not judged in hindsight, but must be evaluated for reasonableness under the circumstances

existing at the time of the alleged errors. *Id.* at 690. To show prejudice, a petitioner must demonstrate that there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694.

In considering petitioner's claims of attorney error, the Tennessee Court of Criminal Appeals cited to *Strickland*, and, thus, its decision was not "contrary to" clearly established federal law as determined by the Supreme Court. The question then becomes whether, in disposing of these claims, the state court unreasonably applied *Strickland*. It is the Court's opinion that it did not.

The factual conclusions reached by the state appellate court, following its review of the record, will be presumed correct, *Brumley v. Winard*, 269 F.3d 629, 637 (6th Cir. 2001) (citing *Sumner v. Matta*, 449 U.S. 539, 546-47 (1981)), because petitioner has offered no clear and convincing evidence to contradict them. The state appellate court's finding that trial and appellate counsels' testimony was not rebutted was not an unreasonable determination of the facts. And, given counsel's testimony as to the circumstances which existed at the time of petitioner's trial (i.e.,that duplicity and unanimity issues stemming from the wording of drug indictments brought in East Tennessee were not recognized or raised by lawyers practicing in that locality and that they themselves did not recognize it), the Court of Criminal Appeals' determination of "no deficient performance" and its rejection of this ineffective-assistance claim did not result from either an unreasonable factual determination in light of the evidence before

it or an unreasonable application of *Strickland*. Indeed, evaluating counsel's performance in hindsight rather than at the time of the alleged error would have been disconsonant with *Strickland*'s guidelines. The writ will not issue with respect to this claim.

Because petitioner presented only these attorney shortcomings in the state appellate court, any additional claims of ineffective assistance that might have been presented in his § 2254 petition have been procedurally defaulted.


## V. **CONCLUSION**

For the above reasons, this petition will be **DENIED** and the case will be **DISMISSED**.

## VI. **CERTIFICATE OF APPEALIBILTY**

Finally, the Court must decide whether to issue a certificate of appealability (COA). Petitioner qualifies for issuance of a COA if he has made a substantial showing of the denial of a constitutional right; he makes such a showing by demonstrating that reasonable jurists might question the correctness of the Court's procedural rulings or its assessment of his constitutional claims. *Slack v. McDaniel,* 529 U.S. 473 (2000). The Court has found that some claims were procedurally defaulted and that one claim was not cognizable in these federal habeas proceedings. The Court has also determined that the claims of ineffective assistance, which were adjudicated in state court, would not

support habeas corpus relief because the state court's decision was not contrary to well established federal law, did not reflect that it had unreasonably applied that law, and did not demonstrate that it had disposed of those claims by unreasonably determining the facts before it.

The Court now finds that reasonable jurists could not disagree with the resolution of these claims and could not conclude that they "are adequate to deserve encouragement proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003), and will **DENY** issuance of a COA.  28 U.S.C. § 2253; Fed. R. App. P. 22(b).

A separate order will enter.


**ENTER**:


　　　　　　　　　　　　　　　　 s/J. RONNIE GREER
　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE